AUSA: John Sarlitto

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

26 mj 3300

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERIC BOOTHE,<br><br>Defendant. | **SEALED COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii); 924(c)(1)(C)(i); 1951.<br><br>COUNTY OF OFFENSE: WESTCHESTER |

SOUTHERN DISTRICT OF NEW YORK, ss.:

PHILIPPE GOULET, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**
**(Conspiracy to Commit Hobbs Act Robbery)**

1. On or about August 29, 2025, in the Southern District of New York and elsewhere, ERIC BOOTHE, the defendant, and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, BOOTHE conspired with others to rob at gunpoint a gas station in the vicinity of Mount Vernon Avenue in Mount Vernon, New York.

(Title 18, United States Code, Section 1951.)

**COUNT TWO**
**(Hobbs Act Robbery)**

2. On or about August 29, 2025, in the Southern District of New York and elsewhere, ERIC BOOTHE, the defendant, knowingly committed robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and aided and abetted the same, to wit, BOOTHE robbed at gunpoint a gas station in the vicinity of Mount Vernon Avenue in Mount Vernon, New York.

(Title 18, United States Code, Sections 1951 and 2.)

**COUNT THREE**
**(Possession and Brandish of a Firearm During and in Relation to a Crime of Violence)**

3. On or about August 29, 2025, in the Southern District of New York and elsewhere, ERIC BOOTHE, the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the Hobbs Act robbery charged in Count Two of this Complaint, knowingly used and carried a firearm, and, in furtherance of such crime, possessed a firearm, which was brandished.

4. At the time of the offense, ERIC BOOTHE, the defendant, had a prior final conviction for a violation of Title 18, United States Code, Section 924(c), to wit, a conviction on or about March 31, 2016 in the United States District Court for the Southern District of New York for using and carrying a firearm in furtherance of a crime of violence, which firearm was brandished, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and (ii).

(Title 18, United States Code, Section 924(c)(1)(A)(i) and (ii), 924(c)(1)(C)(i), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since approximately 2017. For approximately five years, I was assigned to a healthcare fraud squad in the FBI's New York Field Office. In that capacity, I investigated businesses and individuals for their participation in healthcare fraud. For approximately four years, I have been assigned to the Westchester Safe Streets Task Force, where I investigate violence and firearms offenses, sex trafficking and human trafficking offenses, narcotics crimes, and racketeering activity and gang offenses.

6. I have been personally involved in the investigation of this matter. This affidavit is based in part upon my training and experience, my conversations with other law enforcement officers and others, including witnesses, and my examination of correspondence, reports, video footage, audio recordings, search warrant, subpoena, and court order returns and other law enforcement records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during my investigation. Where the contents of documents or recordings and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise noted.

**ERIC BOOTHE AND JAMAIRE ROBERTSON ROB A GAS STATION AT GUN POINT**

7. On or about August 29, 2025, in the early morning hours, law enforcement officers were alerted to an armed robbery of a gas station located in the vicinity of 30 Mount Vernon Avenue in Mount Vernon, New York (the "Gas Station") that occurred at approximately 5:29AM that day (the "Gas Station Robbery"). Based upon my discussions with law enforcement officers, including officers with the City of Mount Vernon Police Department ("MVPD"), the Westchester County Police Department ("WCPD"), and the New York City Police Department ("NYPD"), my examination of reports and records, conversations with witnesses, my review of video surveillance footage, and my personal participation in this investigation, I have learned, among other things, the following, in substance and part, about the Gas Station Robbery:

a. MVPD officers responding to the scene of the Gas Station Robbery encountered a clerk ("Victim-1"), who had been working at the Gas Station at the time of the Gas Station Robbery. Victim-1 recounted to officers, in substance and in part, that two male individuals ("Suspect-1" and "Suspect-2," collectively, the "Suspects") approached him on the premises of the Gas Station, each brandishing a firearm. The Suspects pushed Victim-1 against a wall and demanded money, taking all the cash on Victim-1's person (approximately $500-600 dollars), which, Victim-1 indicated, represented the gas station's profits from the preceding day, as well as Victim-1's wallet.

b. Security camera footage from the Gas Station reviewed by law enforcement captured the Suspects' entry onto the premises of the Gas Station at approximately 5:29 a.m., their robbery of Victim-1, and their flight from the premises thereafter, at approximately 5:31 a.m. In the recovered footage, Suspect-1 appears wearing a black hoodie, gloves, and black pants while Suspect-2 appears wearing a white sweatshirt over a light gray hoodie, gray shorts, white sneakers, dark gloves, and a patterned bandana over his face. The footage shows each Suspect brandishing a firearm at various points. Excerpts from the Gas Station's surveillance footage, compiled from multiple camera angles, are reproduced below:



*Suspect-2 (foreground) approaches past the front of the Gas Station's convenience store, while Suspect-1 (background, circled in red) circles around a parked car*



*Suspect-1 (r) and Suspect-2 (l) rush toward Victim-1, each brandishing a firearm in his right hand*



*Suspect-2 (foreground) brandishes his firearm directly at Victim-1 as Suspect-1 approaches from the side*



*Suspect-1 jostles Victim-1 toward the wall of the Gas Station's convenience store while Suspect-2 places his firearm into the waistband of his shorts with a gloved hand*

c. Approximately two minutes after the Suspects arrived at the Gas Station, and having robbed Victim-1, security camera footage collected and reviewed by law enforcement shows the Suspects leaving the Gas Station and fleeing south along South Bond Street in Mount Vernon toward a bridge over the railroad tracks where South Bond Street becomes South 14th Avenue:




*Suspect-1 (r) and Suspect-2 (l) flee the Gas Station southbound along South Bond Street.*

 

*Suspect-2 runs down South Bond Street toward the bridge over the railroad tracks at appx. 5:31:48 a.m., followed by Suspect-1 at appx. 5:31:57*

d. Security camera footage obtained from a retail premises located on or near the intersection of West 1st Street and South 14th Avenue in Mount Vernon, *i.e.*, on the far side of the bridge shown in the images immediately above, showed that the Suspects separated at approximately 5:32 a.m., after crossing over the railroad tracks. Specifically, the video surveillance footage shows Suspect-1 proceeding southwest along Pearl Street in Mount Vernon while Suspect-2 flees across West 1st Street eastbound, in the opposite direction:



*Appx. 5:32 a.m.: Suspect-1 (r) and Suspect-2 (l) separate in the vicinity of 223 West 1st Street.*

e. Approximately several minutes later, NYPD officers assigned to the Bronx, New York, who were in the vicinity of Pearl Street and were aware of the Gas Station Robbery, observed Suspect-1 running down Pearl Street. The NYPD officers exited their vehicle and began searching for Suspect-1 in the vicinity of a residence on or near Pearl Street. At approximately 5:42 a.m., Suspect-1 discharged his firearm multiple times at the NYPD officers, who returned fire in turn. Officers observed Suspect-1 fleeing toward the back of the residential property on or near Pearl Street. In a post-encounter canvas of the property, law enforcement officers recovered, without limitation, a black firearm (pictured below) subsequently identified as a black Ruger 9mm pistol bearing serial number 863-27165. Law enforcement officers also recovered a black sweatshirt in the vicinity of train tracks located behind the residence on or near Pearl Street, in the direction Suspect-1 had been observed to flee.



**THE FBI IDENTIFIES ROBERTSON AND SUBSEQUENTLY IDENTIFIES BOOTHE**

8. Working with other law enforcement agencies, the FBI began working to identify the perpetrators of the Gas Station Robbery on or about the same morning the crime took place. From my participation in this investigation, and in those efforts specifically, and as described in greater detail below, I am aware that Suspect-1 was identified as Jamaire Robertson on or about the afternoon of August 29, 2025. I am also aware that Robertson was arrested on or about that same day, and that he gave a *Mirandized* post-arrest statement to law enforcement in which, in sum and substance, he implicated himself in the Gas Station Robbery. On or about August 30, 2025, Robertson was charged on federal complaint and presented before the Honorable Katherine H. Parker, Magistrate Judge, Southern District of New York.[1]

9. As set out in the balance of this Complaint, the FBI's subsequent investigation has identified Suspect-2 as ERIC BOOTHE, the defendant. A photograph of BOOTHE, which was taken by law enforcement in connection with an arrest of BOOTHE made on or about May 17, 2022, is below:



*ERIC BOOTHE, the defendant.*

10. Following the Gas Station Robbery, law enforcement officers canvassed for, received, and reviewed additional video surveillance footage from various premises in the vicinity of the Gas Station, the Suspects' path of approach, and their respective paths of flight. Based upon

[1] Robertson was charged with violations of Title 18, United States Code, Sections 1951, 2, and 924(c)(1)(A)(i), (ii), and (iii). I was the affiant for that Complaint.

my review of this footage, as well as my discussions with MVPD, WCPD, NYPD, and other law enforcement officers and my review of law enforcement reports and records, I have learned, among other things, the following, in substance and part, about events leading up to the Gas Station Robbery as depicted on recovered video footage:

a. Video surveillance footage from approximately 5:09 a.m. on or about August 29, 2025 shows a black BMW sedan arrive outside a certain multifamily apartment building, in the Bronx, New York (the "East 242nd Street Address"). From querying the sedan's vehicle identification number ("VIN") in law enforcement records, law enforcement confirmed that the vehicle (the "Robertson Vehicle") was registered to Jamaire Robertson, whom law enforcement and open-source records also confirmed to reside in an apartment located at the East 242nd Street Address. An excerpt of surveillance footage showing the Robertson Vehicle at the East 242nd Street Address, and showing Jamaire Robertson walking away from the driver's seat, clad in street clothes, is below:



*Appx. 5:10 a.m.: Jamaire Robertson parks the Robertson Vehicle outside the 242nd Street Address and exits the driver's seat.*

b. From approximately 5:10 a.m. until approximately 5:17 a.m., while surveillance video obtained from the East 242nd Street Address showed that Robertson was inside the apartment building, the Robertson Vehicle remained stationary outside the East 242nd Street Address, with its hazard lights engaged. At approximately 5:16 a.m., the Robertson Vehicle's cabin light illuminated, showing a male passenger reclined in the front passenger seat. The passenger, who is consistent with the appearance and build of Suspect-2 as captured on the Gas Station Robbery surveillance footage described above, is seen on surveillance footage to unfurl a bandana and pull a light gray hood over his dark hair, which was styled in thick braids. At approximately the same time, Jamaire Robertson returned to the Robertson Vehicle from the 242nd Street Address, now wearing the same clothes visible in the Gas Station surveillance footage excerpted above, *i.e.*, a black hoodie and black pants. Excerpts from the relevant surveillance footage are below:



*Appx. 5:17:10 a.m.: Suspect-2 unfurls a bandana in the front passenger seat of the Robertson Vehicle.*



*Appx. 5:17:17 a.m.: Suspect-2 pulls a light-colored hood over his dark, braided hair in the front passenger seat of the Robertson Vehicle.*



*Appx 5:17:29 a.m.: Robertson (circled in red) changes shoes behind the Robertson Vehicle, its trunk open, while Suspect-2 remains in the front passenger seat*

c. At approximately 5:17:30, the video surveillance shows Suspect-2 reach down toward the floor of the front passenger area below the dashboard of the Robertson Vehicle, retrieve a small item, and lean back to stow the item in his waistband. Based on my training and experience investigating firearms crimes, the size of this object and the manner in which Suspect-2 stowed it in his waistband are consistent with possession of a handgun of the sort brandished by Suspect-2 during the Gas Station Robbery, as captured on video surveillance excerpted and described above. Excerpts from the relevant surveillance footage are below:



*Suspect-2 leans forward to retrieve a small item from the floor beneath the front passenger-side dashboard.*



*Suspect-2 leans back and appears to stow the small item in his waistband.*

d. At approximately 5:18 a.m., as depicted below, Robertson and Suspect-2 set off on foot away from the Robertson Vehicle in the direction of the Gas Station:



e. Additional video surveillance footage from between approximately 5:19AM and 5:29AM, which was obtained and reviewed by law enforcement, documents Robertson and Suspect-2 proceeding together on foot toward the Gas Station.

11. The FBI's canvas for relevant video surveillance footage also extended to records capturing events subsequent to the Gas Station Robbery, including the activities and whereabouts of both Suspects. Based upon my review of such surveillance footage, as well as my discussions with MVPD, WCPD, NYPD, and other law enforcement officers and my review of law enforcement reports and records, I have learned, among other things, the following, in substance and part, about events following the Gas Station Robbery as depicted on recovered video surveillance footage:

a. With respect to Jamaire Robertson, at approximately 6:25AM on or about August 29, 2025, approximately 56 minutes after the Gas Station Robbery and approximately 43 minutes after Robertson discharged his firearm at NYPD officers on or near Pearl Street, security camera footage from the East 242nd Street Address showed Robertson returning to the lobby of the East 242nd Street Address clad only in a t-shirt and underwear. An excerpt from this footage is below:



b. At approximately 11:54 a.m. on or about August 29, 2025, additional security camera footage from the East 242nd Street Address shows Robertson shoving items into a black plastic bag, which he then discards in the trash chute. Law enforcement retrieved this black plastic bag and recovered from it a blue shirt consistent with the t-shirt worn by Robertson in the footage excerpted above, along with a white shirt.[2]

c. With respect to Suspect-2, law enforcement canvassed for, obtained, and reviewed additional video surveillance footage from before and after the Gas Station Robbery in an effort to ascertain, among other things, the path of Suspect-2's flight after he separated from Robertson at approximately 5:32 a.m. Without limitation, the results of this canvas included the below:

---

[2] From my participation in this investigation, I know that DNA testing performed by an FBI forensic analysis laboratory revealed that DNA consistent with Robertson's was recovered from the articles of clothing Robertson attempted to dispose in the black plastic bag. I am also aware that DNA consistent with Robertson's was present on the black hooded sweatshirt recovered by law enforcement from the area around Pearl Street, as referenced in paragraph 7(e), above.

i. On or about August 29, 2025, at approximately 5:36 a.m., Suspect-2, having apparently removed the patterned bandana, dark gloves, and white sweatshirt visible in surveillance footage of the Gas Station Robbery, but still wearing the light gray hoodie, dark gray shorts, and white sneakers, was captured on surveillance video walking in the vicinity of a residence on or near Hill Avenue in the Bronx. An excerpt from that surveillance footage appears below:



*Appx. 5:36 a.m.: Suspect-2 walks in the vicinity of a residence on or near Hill Avenue in the Bronx.*

ii. On or about August 29, 2025, at approximately 5:48 a.m., surveillance video at a residential property located on or near Nereid Avenue (the "Nereid Avenue Address") in the Bronx captured Suspect-2 walking on the sidewalk. An excerpt from that surveillance footage appears below:



*Appx. 5:48 a.m.: Suspect-2 walks in the vicinity of the Nereid Avenue Address.*

12. Incident to the arrest of Jamaire Robertson, the FBI seized a cellphone (the "Robertson Cellphone"), the contents of which were reviewed pursuant to a federal search warrant. Based on my review of the contents of the Robertson Cellphone, and my discussions with other law enforcement officers, I am aware that ERIC BOOTHE, the defendant, was regularly in contact with Jamaire Robertson via cellphone in the months leading to the Gas Station Robbery. In substance and in part and without limitation, I learned the following from law enforcement's search of the Robertson Cellphone and from other law enforcement records and reports:

a. Saved on the Robertson Cellphone was a contact listed under the name "easy e," with which Robertson frequently communicated during the summer of 2025 via, without limitation, text messages, WhatsApp messages, and WhatsApp calls. From my participation in this investigation, I am aware that "Easy" is a street name used by BOOTHE.[3]

b. The call number saved in the Robertson Cellphone as "easy e" was serviced by AT&T. Subscriber records associated with that call number and obtained by law enforcement identify "ERIC BOOTHE" as the user of this call number (the "BOOTHE 2025 Cellphone"). These Subscriber Records identify the party financially responsible for the BOOTHE 2025 Cellphone as BOOTHE's mother.

i. AT&T subscriber records also list an address immediately next door to the Nereid Avenue Address, *i.e.*, the premises where Suspect-2 was captured on surveillance footage less than approximately 20 minutes after the Gas Station Robbery, as BOOTHE's "user address." From Department of Motor Vehicles records, I know that this same address is listed on BOOTHE's New York State driver's license as BOOTHE's address. Based on my review of law enforcement and open-source records, and my interview of the resident of a nearby premises, I learned that the residence at this address on Nereid Avenue is inhabited by BOOTHE's mother, and that BOOTHE occasionally resides there with her.

c. Among the communications between the Robertson Cellphone and the BOOTHE 2025 Cellphone were a series of identifiable photographs depicting BOOTHE, which the Robertson Cellphone sent to the BOOTHE 2025 Cellphone via WhatsApp on or about July 5, 2025. In these photographs, including the photograph excerpted below, BOOTHE, with dark hair styled in thick braids, is seen carrying a distinctive black shoulder bag:



*Photograph of ERIC BOOTHE sent to the BOOTHE 2025 Cellphone by the ROBERTSON Cellphone on or about July 5, 2025 at approximately 3:49 p.m.*

---

[3] For example, and without limitation, I know from my review of court records that when ERIC BOOTHE, the defendant, was previously convicted in approximately 2016 in the Southern District of New York for violations of Title 18, United States Code, Sections 924(c)(1)(A)(ii), 924(j) and 1951, and Title 21, United States Code, Sections 841(b)(1)(B) and 846, he was named in the judgment of conviction as "ERIC BOOTHE a/k/a 'Easy.'"

i. BOOTHE's hairstyle in this photograph matches the appearance of Suspect-2 in the surveillance video excerpted in Paragraph 10(b) above, before Suspect-2 pulled up his hood over his dark braided hair while seated in the passenger seat of the Robertson Vehicle prior to the Gas Station Robbery.

ii. Moreover, the distinctive black shoulder bag displayed by BOOTHE in the photograph closely matches the appearance of an item recovered by law enforcement during a warrant-authorized search of the Robertson Vehicle after the Gas Station Robbery. This item, depicted in a photograph below, was recovered from the front passenger area of ROBERTSON's car, beneath the dashboard, *i.e.*, the area where Suspect-2 was seen to reach in the surveillance video excerpted in Paragraph 10(c) above, immediately before appearing to stow a small item in his waistband.



d. The distinctive black shoulder bag is also visible in a photograph dated on or about August 12, 2025 and retrieved during a warrant-authorized search of an iCloud account attributed to BOOTHE and associated with the BOOTHE 2025 Cellphone (the "BOOTHE iCloud"). In the photograph excerpted below, BOOTHE is in possession of what appears to be the same distinctive shoulder bag, and is also wearing white sneakers consistent with those worn by Suspect-2 during the Gas Station Robbery:



13. The FBI also sought and obtained, pursuant to federal search warrants, historical location information for the BOOTHE 2025 Cellphone for periods during and around the time of

the Gas Station Robbery. From my participation in this investigation, my review of search warrant returns and law enforcement records, reports, and analyses, and my discussions with other FBI personnel and law enforcement officers, I learned the following, in substance and in part and without limitation, from location data for the BOOTHE 2025 Cellphone:

a. The BOOTHE 2025 Cellphone and the Robertson Cellphone were co-located and traveled in tandem for significant portions of the early morning hours on or about August 29, 2025, prior to the Gas Station Robbery. Without limitation, location information for the two devices shows the following:

i. At approximately 12:42 a.m. on or about August 29, 2025, the BOOTHE 2025 Cellphone and the Robertson Cellphone were together in the vicinity of East 233rd Street and Bronxwood Avenue in the Bronx.

ii. At approximately 12:46 a.m., the BOOTHE 2025 Cellphone and the Robertson Cellphone were together in the vicinity of East 237th Street and White Plains Road, near Nereid Avenue, in the Bronx.

iii. By approximately 12:58 a.m., the BOOTHE 2025 Cellphone and the Robertson Cellphone had traveled in tandem to Mount Vernon and were located near the intersection of South 10th Avenue and 1st Street. The BOOTHE 2025 Cellphone and the Robertson Cellphone remained together in Mount Vernon on or near North 5th Avenue until approximately 2:45 a.m., when they traveled back to the Bronx in tandem, returning to the vicinity of Nereid Avenue and White Plains Road at approximately 3:02 a.m.

iv. From approximately 3:36 a.m. until approximately 4:36 a.m., the Robertson Cellphone traveled to Mount Vernon before returning to the Bronx while the BOOTHE 2025 Cellphone remained in the Bronx in the vicinity of Nereid Avenue and White Plains Road. By approximately 4:36 a.m., the Robertson Cellphone had returned to the Bronx and the two devices were again co-located at or near Nereid Avenue and White Plains Road.

v. At approximately 4:39 a.m., *i.e.*, approximately fifty minutes before the Gas Station Robbery took place, the users of the BOOTHE 2025 Cellphone and the Robertson Cellphone, which were traveling in tandem at or near the intersection of Furman Avenue and East 239th Street in the Bronx, appear from the cessation of subsequent pings to have powered off their respective devices within approximately three minutes of each other.

b. The BOOTHE 2025 Cellphone and the Robertson Cellphone were also co-located later in the day on or about August 29, 2025, after the Gas Station Robbery had taken place and before Robertson's arrest by law enforcement at approximately 3:17 p.m. Without limitation, location information for the two devices on that day shows the following:

i. At approximately 9:46 a.m., the BOOTHE 2025 Cellphone and the Robertson Cellphone were located together near the intersection of East 232nd Street and Carpenter Avenue in the Bronx.

ii. At approximately 11:20 a.m., the BOOTHE 2025 Cellphone and the Robertson Cellphone were located together near the intersection of Pittman Avenue and Baychester Avenue in the Bronx.

**BOOTHE ALTERS HIS PATTERNS OF COMMUNICATION AND RELOCATES TO THE POCONOS**

14. From my participation in this investigation, my review of subpoena, search warrant, and court order returns, my review of law enforcement records and reports, and my discussions with other law enforcement officers, I know that, in the hours, days, and months following the Gas Station Robbery, ERIC BOOTHE, the defendant, significantly altered his patterns of communication, including by abandoning use of the BOOTHE 2025 Cellphone. Without limitation, I am aware of the following, in substance and in part:

a. Records obtained from AT&T, the service provider for the BOOTHE 2025 Cellphone, indicate that user activity associated with the call number assigned to the BOOTHE 2025 Cellphone ceased as of on or about September 1, 2025, *i.e.*, one day after the Gas Station Robbery. I also understand from AT&T records that the provider subsequently discontinued service to this call number, and that the call number was not ported by its subscriber to a new carrier.

b. Based on records obtained from Meta pursuant to a court order, including IP address and account access records obtained pursuant to a court order, I am aware that an Instagram account attributed to BOOTHE which was associated in Meta subscriber records with the BOOTHE iCloud, had been registered on or about July 28, 2023, and displayed accountholder name "ez" (the "BOOTHE Instagram"), had been accessed on an approximately near-daily basis since at least approximately June 9, 2025, and was often accessed multiple times per day.

i. Records obtained from Meta show that there was no user-initiated activity associated with the BOOTHE Instagram after on or about August 29, 2025, *i.e.*, the date of the Gas Station Robbery, when the iPhone that had been used to access the BOOTHE Instagram since approximately October 2024 accessed the account for the last time at approximately 9:54 a.m.

c. Based on records obtained from Snap pursuant to a court order, I am aware that a Snapchat account attributed to BOOTHE, which was associated in Snap subscriber records with the BOOTHE 2025 Cellphone, had been registered on or about January 6, 2019, and displayed accountholder name "Ezzy Dem" (the "BOOTHE Snapchat"), had been accessed on an approximately near-daily basis since at least approximately December 31, 2024, and was often accessed multiple times per day.

i. Records obtained from Snap indicate that all user-initiated activity on the BOOTHE Snapchat ceased as of on or about August 29, 2025, *i.e.*, the date of the Gas Station Robbery, at approximately 2:57 p.m.

15. The FBI's investigation indicates that ERIC BOOTHE, the defendant, presently uses a different cellphone, subscribed in a name not his own and serviced by Verizon (the

"BOOTHE 2026 Cellphone").[4] From my participation in this investigation, my review of search warrant and subpoena returns, and my discussions with other law enforcement personnel, I have learned the following, in substance and in part and without limitation, about BOOTHE's current pattern of life:

a. From historical location information for the BOOTHE 2026 Cellphone obtained pursuant to a search warrant, I am aware that, throughout the month of July 2026 and until at least on or about August 11, 2026, the BOOTHE 2026 Cellphone was principally located in the vicinity of Tobyhanna, Pennsylvania, in the Poconos region, and made three short trips by car to the vicinity of the Bronx, New York in that time.

b. Transaction records maintained by Block, the FBI identified an in-person purchase at a pizza shop in or near Tobyhanna, Pennsylvania ("Pizzeria-1") using the BOOTHE CashApp that took place on or about July 22, 2026. The FBI obtained surveillance footage from Pizzeria-1 from the time of that transaction, excerpted below, which shows ERIC BOOTHE, the defendant, using the 2026 BOOTHE Cellphone to effect the purchase. FBI personnel also interviewed the proprietor of Pizzeria-1, who identified BOOTHE as a regular patron:



*July 22, 2026: ERIC BOOTHE, holding the BOOTHE 2026 Cellphone, effects an in-person CashApp transaction at Pizzeria-1*

[4] Among other sources of attribution, I am aware from account and transaction records maintained by Block that the BOOTHE 2026 Cellphone was used on or about April 24, 2026 to open a CashApp account in the name of ERIC BOOTHE, the defendant, and that BOOTHE's true and correct date of birth and social security number, and his prior address on or near Nereid Avenue in the Bronx, were input as well (the "BOOTHE CashApp"). On or about May 23, 2026, to further verify the BOOTHE CashApp, BOOTHE used the BOOTHE 2026 Cellphone to upload an identifiable selfie and a photograph of his New York State driver's license, and input a new residential address located in or near Tobyhanna, Pennsylvania.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of ERIC BOOTHE, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

PHILIPPE GOULET
Special Agent
Federal Bureau of Investigation

Sworn to before me
this 13th day of August, 2026.

THE HONORABLE JUDITH C. McCARTHY
Chief United States Magistrate Judge
Southern District of New York